**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL J. MINER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: |
| GOVERNMENT PAYMENT SERVICE, INC., d/b/a GOV PAY NET, | ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiff, Michael J. Miner, individually and on behalf of all others similarly situated, through his undersigned counsel, alleges for his Class Action Complaint against Defendant, Government Payment Service, Inc., d/b/a GovPayNet ("GovPayNet" or "Defendant"), based upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including the investigation conducted by his counsel as follows:

**NATURE OF THE ACTION**

1.       This is a class action brought by Plaintiff individually and on behalf of a class of Illinois residents who used their credit or debit cards to make a cash bail deposits in connection with traffic citations and who were charged an additional fee for bail bond services by GovPayNet, as defined herein.

2.       As alleged more fully herein, Defendant's practice of charging unlawful fees in connection with bail deposits paid to Cook County municipalities gives rise to Plaintiff and the Class's claims alleged herein.

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the laws of the United States and pursuant to 28 U.S.C. § 1332(d)(2), as this is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the class, which number in excess of 100, are citizens of a state different from Defendant.

4.      Personal jurisdiction over Defendant is proper under 735 ILCS 5/2-209(b)(4) (corporation doing business within this State), and Section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States).  735 ILCS 5/2-209(b)(4), and (c).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in this district including, *inter alia*, Defendant's act of providing bail and bond payment processing services to the Clerk of the Circuit Court of Cook County and the Cook County Department of Revenue.

**PARTIES**

6.      Plaintiff, Michael J. Miner ("Miner"), is a natural person residing and domiciled in Watseka, Illinois.  As such, Plaintiff is a citizen of Illinois.  Plaintiff is a member of the Class defined herein.

7.      Defendant, Government Payment Service, Inc., d/b/a GovPayNet, is a corporation organized under the laws of Delaware with its principal place of business in Indianapolis, Indiana. As such, Defendant is a citizen of both Delaware and Indiana.  GovPayNet provides bail and bond payment processing services to law enforcement and county agencies in Illinois, including but not

limited to the Clerk of the Circuit Court of Cook County and the Cook County Department of Revenue.

8.      GovPayNet was founded in 1997 by a former sheriff to provide bail and bond processing services.  More than 650 law enforcement and county agencies have contracted with GovPayNet for bail and bond processing.  Prior to the termination of its contract, the Clerk of the Circuit Court of Cook County and the Cook County Department of Revenue were among GovPayNet's largest customers.  As part of its bail and bond processing services, GovPayNet also processes credit and debit card transactions when such cards are used to make bail and bail-related payments.

## FACTUAL BACKGROUND

9.      GovPayNet is not merely a processor of credit card payments, but a provider of commercial bond and bail-related services, which were abolished by statute in 1963.

10.      Although processors ordinarily charge the merchant a direct fee for their services, in many instances a large governmental entity, a merchant in its own right for the payment of various constituent obligations, will insist that the credit card/debit transactions be "cost neutral" to the government. In such cases, processors retained by a governmental merchant in some instances may seek to collect a convenience fee from the cardholder, albeit on behalf of the merchant.

11.      A convenience fee is basically a charge to the cardholder in addition to the original transaction amount, presumably for the convenience of a merchant accepting a payment method outside of its ordinary payment channels.

12.      Card associations such as Visa adopt governing rules and regulations regarding the use of credit and debit cards issued under their brand.  Whether credit card processors retained by

a governmental merchant are able to collect a convenience fee from the cardholder directly or on behalf of the merchant depends on the particular card association rules.

13.     For example, under Visa's rules, a convenience fee may only be charged by a merchant that actually provides goods or services to the cardholder, and may not be charged by any third party.  As set forth below, GovPayNet has previously sought to justify its fees to Visa, Cook County and others by claiming that it provided bail bond services, an activity that was abolished decades ago.

14.     Illinois abolished commercial bail and bond-related services in 1963.  *See* 725 ILCS 5/103-9 ("No bail bondsman from any state may seize or transport unwillingly any person found in this State who is allegedly in violation of a bail bond posted in some other state. The return of any such person to another state may be accomplished only as provided by the laws of this State. Any bail bondsman who violates this Section is fully subject to the criminal and civil penalties provided by the laws of this State for his actions.").

15.     Instead of private bail bondsmen, Illinois is one of four states that requires that bail bonds be obtained from government agencies usually a county or state organization.  In order to obtain this bail, defendants must either pay a percentage of the bail up front, usually ten percent, or provide some form of collateral like real estate.  Once the defendant appears for their court date, the deposit is returned or the lien is removed.

16.     In Cook County, when someone is jailed, bail may be determined by an approved bail schedule or set by the Court. Depending on the offense charged, a prisoner may have to post a bond equal to 10% of the amount of the bail or a bond equal to the entire amount of bail as a condition of release.

17.     From 2005 until at least approximately 2012, the Clerk of Court contracted with GovPayNet to process its bail or bond transactions via credit or debit card, *as well as provide bail and bond services directly to the consumer/cardholder*. In addition to processing bail or bond credit and/or debit card payments, GovPayNet charged cardholders a fee equal to 8% of the amount of bail paid for what it describes as "bail bond services."

18.     Sometime after 2012, the Clerk of Court replaced GovPayNet's services with those of LexisNexis Vitalchek, Inc., which charges a substantially smaller, 2.13% credit card processing fee.

19.     Even in cases where, as here, a cardholder's case was dismissed or the payor was found not guilty, GovPayNet retained the full amount of its fee.

## FACTS RELATING TO PLAINTIFF

20.     On September 26, 2011, Plaintiff, who was transporting farm equipment on a flatbed trailer that he had sold to its buyer was stopped by the East Hazel Crest Police Department and issued two citations—one for pulling an overweight trailer and the other for an expired registration.

21.     The same day, Plaintiff made a cash bail payment totaling $2612.00, as required by law, to the Clerk of Court.  When Plaintiff used his credit card to pay, GovPayNet charged him a fee of 8% of the amount paid, or $208.96, for purportedly providing commercial bail bond services, which had been abolished in this State unbeknownst to Plaintiff.

22.     Plaintiff maintained in court that the overweight and registration provisions of the vehicle code did not apply to the transportation of equipment owned and used in farming operations, which is being transported by a properly licensed and registered vehicle for purposes of sale.

23.     Thereafter, on June 8, 2012, the citations were voluntarily dismissed by the Village of East Hazel Crest and the court directed the Clerk of Court to refund the full amount of bail paid, which it did by check on December 20, 2012.

24.     Plaintiff did not receive a refund or reimbursement of the $208.96 charged by GovPayNet for its supposed bail bond services, notwithstanding the fact that the citations against him were voluntarily dismissed.

## CLASS ACTION ALLEGATIONS

25.     This action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), as set forth below.

26.     *Class Definition.*   Plaintiff brings this action individually and on behalf of the following class of similarly situated persons (the "Class"), of which Plaintiff is a member:

> All residents of the State of Illinois who used their credit cards to make a bail deposit in connection with traffic citations and who were charged an additional fee for bail bond services by GovPayNet.

Excluded from the Class are Defendant and any of its officers, directors or employees, Class counsel, the presiding judge, named plaintiffs in any substantially similar actions and members of their immediate families.  Plaintiff hereby reserves his right to amend the above class definition based on discovery and the proofs at trial.

27.     *Numerosity.*   The members of the Class are so numerous and geographically dispersed throughout the United States such that joinder of all members is impracticable.  Plaintiff believes that there are thousands or more persons in the Class.  The exact number and identity of Class members is unknown to Plaintiff at this time and can only be ascertained from information and records in the possession, custody or control of Defendant.

28.     *Commonality.*   There are questions of law or fact common to the Class including, *inter alia*, the following:

-6-

a.     Whether GovPayNet provided bail and bond-related services in violation of Illinois law;

b.     Whether all or part of the fees charged by GovPayNet to Plaintiff and the Class are convenience fees;

c.     Whether the fees charged by GovPayNet violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*;

d.     The amount of unlawful bail and bond-related service fees charged by GovPayNet to Plaintiff and other Class members and the measure of their damages;

e.     Whether Plaintiff and the Class are entitled to equitable relief, including rescission of any contract or other agreement to pay for bond or bail-related services provided by GovPayNet;

f.     Whether Plaintiff and the Class are entitled to declaratory relief providing that the bond and bail-related services provided by GovPayNet were unlawful; and

g.     whether Plaintiff and the members of the Class are entitled to damages and the appropriate measure thereof.

29.     *Typicality.*   The claims of Plaintiff are typical of the claims of the Class alleged herein.   Plaintiff and other members of the Class are all persons who used their credit cards to make a bail deposit in connection with traffic citations issued by municipalities in Cook County and who were charged an additional fee for bail bond services by GovPayNet.

30.     *Adequacy.*   Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of complex and class action litigation.   The interests of Plaintiff are aligned with, and not antagonistic to, those of the Class.

31.    *Fed. R. Civ. P. 23(b)(2) Requirements.*  The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist, as GovPayNet has acted or has refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

32.    Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

33.    Defendant's uniform common course of conduct make declaratory relief with respect to the Class as a whole appropriate.

34.    *Fed. R. Civ. P. 23(b)(3) Requirements.*  This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3).  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

35.    The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for individual Class members.

36.    This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

## COUNT I

**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*)**

37.    Plaintiff repeats and realleges the foregoing allegations as though fully stated herein.

38.     At all times relevant hereto, there was in full force and effect a statute in Illinois commonly known as the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (the "Act").

39.     Section 2 of the Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965 [815 ILCS 510/2], in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.  In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act. [15 U.S.C. § 45].

815 ILCS 505/2.

40.     As alleged in detail herein, GovPayNet charged Plaintiff and the Class for bail and bond-related services which, unbeknownst to them, it could not provide.  GovPayNet charged and accepted payments for bail and bond-related services that had been abolished by statute decades before—a fact it omitted or concealed from Plaintiff and the Class in order to continue obtain amounts far in excess of ordinary credit card processing fees.

41.     The above-described practices were unfair within the meaning of the act because they offended Illinois' public policy against commercial bail and bond-related services and were otherwise unethical, oppressive and unscrupulous and caused substantial injury to the consumers who paid GovPayNet's fees for bail and bond-related services.

42.     GovPayNet intended that Plaintiff and the Class rely on the false representations described above, and otherwise omitted to disclose the material fact that its bail bond activities were unlawful, in its effort to generate revenue from such activities

43. The above-described unfair and deceptive and practices took place in a in a course of conduct involving trade or commerce—i.e., in the context of commercial bail and bond payment services.

44. As a direct and proximate result of the foregoing, Plaintiff and the Class paid GovPayNet's fees for bail and bond-related services described herein.

## COUNT II

### (Unjust Enrichment)

45. Plaintiff repeats and reallages the foregoing allegations as though fully stated herein.

46. By virtue of having collected fees for unlawful bail and bond-related services, Defendant unjustly retained a benefit to the detriment of Plaintiff and the Class.

47. Defendant's retention of the above-described bail and bond-related service fees amounts violates the fundamental principles of justice, equity, and good conscience.

48. As a direct and proximate result of the foregoing, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B. Designating Plaintiff as representative of the Class and his undersigned counsel as Class counsel;

C. Entering judgment in favor of Plaintiff and the Class and against Defendant;

        D.      Awarding Plaintiff and the Class their actual damages, attorneys' fees and costs, including interest thereon, as allowed by law;

        E.      Awarding Plaintiff and the Class all equitable relief that may be appropriate; and

        F.      Granting all such further and other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 25, 2014               Respectfully submitted,

                                       MICHAEL J. MINER

               By:     s/ William M. Sweetnam

                                       William M. Sweetnam
                                       SWEETNAM LLC
                                       100 North La Salle Street, Suite 1010
                                       Chicago, Illinois  60602
                                       (312) 757-1888
                                       wms@sweetnamllc.com

                                       Larry D. Drury
                                       LARRY D. DRURY, LTD.
                                       100 North La Salle Street, Suite 1010
                                       Chicago, Illinois  60602
                                       (312) 346-7950
                                       ldrurylaw@aol.com

                                       Joseph L. Planera
                                       LAW OFFICES OF JOSEPH L. PLANERA
                                            AND ASSOCIATES
                                       222 Vollmer Road, Suite 2A
                                       Chicago Heights, Illinois  60411
                                       (708) 755-5000
                                       jplanera@sbcglobal.net

                                     *Attorneys for Plaintiff Michael J. Miner*