IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MINER, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 14-cv-7474 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| GOVERNMENT PAYMENT SERVICE, INC. d/b/a GOV PAY NET, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

In this putative class action, Plaintiff Michael Miner complains about fees charged by Defendant Government Payment Service, Inc., d/b/a GovPayNet, to Illinois residents who used their credit or debit cards to make cash bail payments in the state. Plaintiff claims that Defendant's charges for bail and bond services violate the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* (Count I), and that Defendant is also liable for unjust enrichment (Count III) and conversion (Count V).[1] Currently before the Court is Plaintiff's motion [72] regarding the scope of class discovery. For the reasons set forth below, Plaintiff's motion [72] is granted in part and denied in part. This case is set for further status on September 27, 2017 at 9:00 a.m. Plaintiff is given leave to re-file a motion for class certification by September 26, 2017 if he believes such a motion is necessary at this time despite the overruling of the *Damasco* decision in *Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015). The now-pending motion for class certification [76], which is not yet ready for briefing as class discovery remains ongoing, will be stricken on September 27, 2017.

---

[1] Plaintiff's other claims for violation of the ICFA for having a deceptive trade practice (Count II) and common law fraud (Counts IV) were dismissed on June 4, 2015. See [47].

**I.     Background**

Defendant is a credit card processor that provides bail and bond payment processing services to various law enforcement and county agencies. [19] at ¶ 7. Generally, a card processor charges merchants a fee for the services it provides. Some government entities that accept credit cards, however, require contractual terms that direct the card processor to charge a convenience fee directly to the consumer so that the government entity is not charged a fee.

One such county that contracted with Defendant in this way was Cook County, Illinois. In a contract effective in 2005, Defendant agreed to provide Cook County with "Credit Card Bail Service." See [75-1] (Contract for Service). The contract makes clear that Defendant "shall not charge the County any fees or costs for the Credit Card Bail Service * * * . [Defendant's] fee shall be limited to the service fees charged to Arrested Individuals" who used credit cards to post bail service fees. See *id*. at 3, 7. The service fees ranged from $20 to 8% of the total bail amount. *Id*. at 7. According to Plaintiff, the contractual relationship between Cook County and Defendant lasted until 2012. See [19] at ¶ 17. Defendant has entered into "separate, independent" contracts with other Illinois counties as well. See [75] at 7.

Plaintiff availed himself of Defendant's services to make a bail payment in September 2011, presumably pursuant to the contract between Cook County and Defendant. Specifically, Plaintiff used his credit card to pay the Clerk of Circuit Court of Cook County ("Clerk") a bail deposit of $2,612 for two traffic citations he received in East Hazel Crest, Illinois. *Id*. at ¶¶ 20, 21. Defendant charged Plaintiff for the $2,612 bail deposit and an additional 8% (or $208.96) for providing him bail and bond services. *Id.* at ¶ 21. The Village of East Hazel Crest then voluntarily dismissed Plaintiff's citations, and the court directed the Clerk to refund the full

2

amount of bail paid. *Id.* at ¶ 23. Defendant did not refund or reimburse Plaintiff the 8% additional charge for the bail and bond services. *Id.* at ¶ 24.

Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brought this action on behalf of himself and a class of similarly situated Illinois residents. *Id.* at ¶¶ 1, 31, 34. He specifically seeks to represent a class of individuals defined as follows:

> All residents of the State of Illinois who paid a bail deposit with a credit or debit card and who were charged a fee by [Defendant] for purported bail bond services during the period September 25, 2009, through the date of final judgment.

*Id.* at ¶ 26. However, the specific allegations of wrongdoing involving Plaintiff—the single named class representative—alleged in the amended complaint pertain solely to his transaction in Cook County. The amended complaint does not contain any allegations that relate to other Illinois counties. See generally *id*.

Plaintiff propounded interrogatories and document requests on Defendant in October 2015. Defendant provided initial written responses in June 2015 and amended responses in May 2016. Defendant also has produced some 1,300 documents and a spreadsheet identifying potential Cook County class members. See [61]. The parties have conducted three meet-and-confer conferences regarding issues with these requests and responses. Unable to resolve the disputes through those efforts, Plaintiff has requested Court intervention. Specifically, the parties have reached an impasse regarding the geographic scope of discovery requested. Plaintiff propounded discovery requests seeking "discoverable information and documents for a putative class of all Illinois residents who paid a bail deposit with a credit or debit card and were charged a fee by Defendant for purported bail bond services." [72] at 4. Defendant characterizes these requests as "oceanic" and has limited its responses to payments "utilizing the card processing services promulgated and authorized by the County of Cook and the State of Illinois and processed by" Defendant. See, *e.g.*, [75-2] (Defendant's First Amended Answers to Plaintiff's

3

First Set of Interrogatories) at 1 ("Unless otherwise indicated, [Defendant's] responses are limited to the payment of cash bail utilizing the card processing services promulgated and authorized by the County of Cook and the State of Illinois and processed by [Defendant]"), 4 ("based on the allegations in the Amended Complaint, any purported class must be limited, at its broadest, to Illinois[] residents paying a credit or debit card processing fee to [Defendant] when using a credit card to post cash bail in Cook County"); [75-3] (Defendant's First Amended Responses to Plaintiff's First Request for Production) at 13 (objecting to Request No. 23 "to the extent it seeks information related to said items outside Cook County"). Accordingly, Plaintiff has submitted a Federal Rule of Procedure 12(c) motion for a "judicial determination of the appropriate scope" of Plaintiff's class discovery. See [72] at 1. Plaintiff also takes issue with other of Defendant's discovery responses that Plaintiff believes to be insufficient because Defendant's responses direct Plaintiff to seek the information from third parties without first demonstrating that Defendant lacks possession, custody, or control of such information. Plaintiff appears to seek an order compelling the production of such information. See *id*. at 5–6.

Although the Court previously indicated that a Federal Rule of Civil Procedure 12(c) motion appeared to be an appropriate vehicle for presenting the issues concerning the proper scope of this litigation, after consideration of the briefs and the pertinent case law, the Court concludes that this is actually a discovery dispute between the parties over the proper scope of class discovery—not a motion for a judgment of any kind. Accordingly, the Court will issue a ruling that comports with its current understanding of how best to move this case forward to disposition.

## II. Discussion

It is well-established that the federal discovery rules permit liberal discovery in an effort to facilitate the trial or settlement of legal disputes. *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009). Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 37(a) permits a party to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Under Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). A party objecting to the discovery request—here, Defendant—bears the burden of showing why the request is improper. See *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 449–450 (N.D. Ill. 2006). The Court has broad discretion when reviewing a discovery dispute and "should consider the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (internal cites and quotations omitted).

Here, Plaintiff seeks to compel discovery related to a class of all Illinois residents—not just those located in Cook County—to which he claims he is entitled based on the class definition contained in the complaint. See [72] at 4–5. Defendant argues that Plaintiff's motion should be denied because his discovery requests seeking information from Illinois counties outside of Cook are "premature given the fact that this Court has not yet certified Plaintiff's proposed class." [75] at 7. The Court is not persuaded that it should deny Plaintiff's motion on this basis.

In Rule 23 cases where plaintiffs have not yet filed a motion for class certification, discovery may be used to help determine whether the class can properly be certified, particularly with respect to the threshold requirements of "numerosity, common questions, and adequacy of representation." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). Accordingly, as Plaintiff correctly notes, discovery before a class certification ruling is appropriate—and often necessary. See *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982) ("in most cases, a certain amount of discovery is essential in order to determine the certification issue and the proper scope of a class action") (quotation and citation omitted); see also *Ret. Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) ("[S]ome discovery may be necessary to determine whether a class should be certified."); *Chavez v. Hat World, Inc.*, 2013 WL 1810137, at *3 (N.D. Ill. Apr. 29, 2013) (ordering limited pre-certification discovery of information relevant to define the class). This is in line with the "advisable practice for a District Court to follow[, which] is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (quotation omitted).

However, in managing discovery in class actions, "district courts are required to balance the need to promote effective case management, the need to prevent potential abuse, and the need to protect the rights of all parties." *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305 (D. Colo. 1998) (citation omitted). To this end, the 2003 Advisory Committee's Notes to Rule 23 recognize that "it is appropriate to conduct *controlled* discovery * * * limited to those aspects relevant to making the certification decision on an informed basis." Fed. R. Civ. P. 23 Advisory Committee's Notes (emphasis added). Similarly, Rule 26 has its limitations. The 2015

amendments underscored the importance of "proportionality" by moving it to Rule 26(b)(1). When determining the scope of discovery, amended Rule 26 requires the consideration of:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Id.* As applied to class actions, this proportionality standard further supports the notion that pre-certification discovery should not exceed what is necessary to permit the Court to make an informed decision on class certification. In other words, "[d]iscovery must be sufficiently broad to give the plaintiff a realistic opportunity to meet the requirements of class certification, but at the same time, a defendant should be protected from overly burdensome or irrelevant discovery." *Loy v. Motorola, Inc.*, 2004 WL 2967069, at *3 (N.D. Ill. Nov. 23, 2004); accord *Tracy*, 185 F.R.D. at 305 (citation omitted). In implementing this balancing test, some federal courts have held that the plaintiff "bears the burden of * * * showing that * * * discovery is likely to produce substantiation of the class allegations." *Perez v. Safelite Group Inc.*, 553 F. App'x 667, 668–69 (9th Cir. 2014), as amended on denial of reh'g and reh'g *en banc* (Mar. 7, 2014) (quoting *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)); see also *Tracy*, 185 F.R.D. at 305 (a factual basis is required for classwide discovery). Again, any limitations imposed on class discovery lie within "the sound discretion of the court." *Tracy*, 185 F.R.D. at 304–05.

Applying these basic principles to the case as it currently stands, the Court concludes that Plaintiff is entitled to more discovery than he has received to date, but not as much as he has requested. Defendant concedes that it "has entered into separate, independent contracts with Illinois counties outside of Cook County," but claims that "these contracts are under different terms and conditions than the Cook County/GovPayNet contract that governs Plaintiff's

7

transaction and lawsuit." [75] at 7. Accepting this contention as true, it begs the further question: how different? If the contracts only vary slightly or in immaterial ways, then Plaintiff may be an adequate representative even though his own transaction was limited to Cook County. If the contracts vary in significant ways, that may affect the suitability of Plaintiff as a class representative as well as the scope of the action altogether.

Since the contracts are entered into on a county-by-county basis, the intelligent way to assess the scope of the putative class is county-by-county. See *Stewart*, 669 F.2d at 331 (pre-certification discovery can be limited to evidence that, in the sound judgment of the court, would be necessary or helpful to the certification decision). The allegations of the existing amended complaint support the discovery of the contracts that Defendant has entered into with other Illinois counties besides Cook County. However, the Court agrees with Defendant that, at this point, the allegations of the amended complaint do not justify any additional discovery ("other documents and ESI") beyond Cook County, and accordingly, that requests for such information are inappropriate at this time. Cf. *W. Loop Chiropractic & Sports Injury Ctr., Ltd. v. N. Am. Bancard, LLC*, 2017 WL 404896, at *2 (N.D. Ill. Jan. 30, 2017) (in TCPA case, allowing class discovery regarding faxes sent by defendant, including some that the named plaintiff did not receive, because the record contained evidence that other improper faxes were transmitted). If Plaintiff can make a case for including transactions in other counties within the scope of the putative class action for which he would be the sole representative, he then may seek those additional documents and ESI. If the contracts are too different to give rise to claims within the same class and with the same representative plaintiff, then Plaintiff may need to consider subclasses, additional representatives, or separate actions. The Court is satisfied that this

approach, which is based on the case developments to date, meets the proportionality requirements contained in Rule 26.

Accordingly, Plaintiff's motion for judgment on the pleadings is denied, but the Court directs Defendant to provide Plaintiff with copies of all contracts entered into between Defendant and any Illinois county that are valid or would have been valid within the time frame defined in the proposed class definition as set out in the amended complaint. At present, Defendant need not provide any additional discovery relating to transactions involving counties other than Cook. After Plaintiff's counsel reviews the contracts ordered to be provided, counsel may take appropriate action concerning amendments to the complaint and class definition and/or additional discovery requests.[2] Until that time, however, the factual allegations of the complaint, confined as they are to Cook County transactions, do not support further discovery as to any other counties.

Regarding the remainder of the parties' discovery disputes, the parties seem to agree that Federal Rule of Civil Procedure 34 and the case law applying it require parties to produce pertinent documents in their possession, custody, or control, including those documents as to which the party has a legal right to obtain. See [72] at 6; [75] at 13. This is not a difficult concept and the Court expects the parties to conform to it when responding to discovery requests going forward. Thus, in regard to the sufficiency of Defendant's specific discovery responses to date as noted in the briefs (see [72] at 5–6; [75] at 9–15), the Court directs the parties to again meet and confer and during that process to apply the principles set out in this opinion. If disputes remain unresolved after a good faith attempt to resolve them, either party may file a motion to compel, which in all likelihood will be referred to Magistrate Judge Valdez for ruling.

---

[2] To the extent that those requests are onerous or push the bounds of proportionality, the Court is well aware of its authority to shift or share the costs of production.

**III.     Conclusion**

For the reasons stated above, the Court grants in part and denies in part Plaintiff's motion [72]. First, the Court directs Defendant to provide Plaintiff with copies of all contracts entered into between Defendant and any Illinois county that are valid or would have been valid within the time frame defined in the proposed class definition as set out in the amended complaint. Second, the Court directs the parties to meet and confer regarding the remainder of the discovery disputes set forth in the briefing. This case is set for further status on September 27, 2017 at 9:00 a.m. Plaintiff is given leave to re-file a motion for class certification by September 26, 2017 if he believes such a motion is necessary at this time despite the overruling of the *Damasco* decision in *Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015). The now-pending motion for class certification [76], which is not yet ready for briefing as class discovery remains ongoing, will be stricken on September 27, 2017.

Dated:  September 5, 2017                     _____
                                                                Robert M. Dow, Jr.
                                                                United States District Judge